UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 0:22-cv-62445-XXXX

| | |
|---|---|
| **C&P HANSEN HEATING AND COOLING, INC.**, an Alabama corporation; | *<br>*<br>*<br>* |
| Plaintiff, | *<br>* |
| v. | *<br>* |
| **HANSEN AIR PROS, LLC,** a Delaware corporation, | *<br>*<br>* |
| Defendant. | * |

## COMPLAINT

COMES NOW Plaintiff, C&P HANSEN HEATING & COOLING, INC., an Alabama corporation, by and through undersigned counsel of record, and sues Defendant, HANSEN AIR PROS, LLC, a Delaware limited liability company, and alleges as follows:

Parties

1. Plaintiff C&P Hansen Heating and Cooling, Inc. ("C&P") is an Alabama corporation headquartered in Mobile, Mobile County, Alabama and doing business in the State of Alabama.

2. Defendant Hansen Air Pros, LLC ("HAP") is a Delaware Limited Liability Company domiciled at 651 N. Broad Street, Suite 201, Middletown, Delaware 19709.

Jurisdiction and Venue

3. Jurisdiction is proper because this case involves a dispute between parties from different states and the amount in controversy exceeds $75,000.00.  28 U.S.C. § 1332.

Additionally, this action arises under a contract which provides for the jurisdiction of the state and federal courts of Broward County.

4. Venue is proper in, and Defendant is subject to, the personal jurisdiction of this Court because Defendant maintains facilities and business operations in this District, and all or most of the events giving rise to this action occurred in this District. 28 U.S.C. § 1391(b).

Background and Facts

5. C&P Hansen Heating and Cooling, Inc. is majority owned by Chad Setchell ("Setchell") and Kimberly Clayton ("Clayton").

6. Hansen Air Pros, LLC is owned and controlled by Anthony Perera ("Perera").

7. In May of 2021, one of Perera's agents approached Setchell about selling C&P's assets to Defendant.

8. Perera represented to Setchell that a separate company, Air Pros, was acquiring other HVAC contractors around the country for the express purpose of creating a consolidated company that he could then sell at a greater profit than any individual sale.

9. Setchell and C&P entered into negotiations with Perera for the sale of C&P's assets to a new, consolidated HAP.

10. Perera represented to Setchell that a venture capital firm had committed to buying the consolidated company, and represented to Plaintiff that C&P's assets would be more valuable if part of the new company.

11. Perera represented that a Delaware limited liability company, Defendant Hansen Air Pros, LLC, would serve as the consolidated company to be sold.

12. Upon information and belief, Perera formed HAP and controls HAP.

13. Relying on these representations from Perera, C&P reached an agreement to sell most of C&P's assets to HAP.

14. The agreement, in the form of an Asset Purchase Agreement ("the Agreement"), was executed and closed on August 20, 2021.  *See*, Asset Purchase Agreement attached hereto as Exhibit A.

15. The Agreement references Hansen Air Pros, LLC as the "Buyer" and C&P Hansen Heating and Cooling, Inc. as the "Company."  Collectively, the owners of the Company, including Setchell and Clayton, are referred to as the "Owners" and individually as an "Owner." The Company and the Owners are together referred to as the "Seller Group."  For purposes of continuity, this Complaint adopts those naming conventions.

16. The Agreement provided that HAP would acquire substantially all of the assets and certain liabilities of C&P.

17. In exchange C&P would receive a purchase price calculated by a formula that started with an amount of forty-one million two hundred thousand dollars that was then adjusted based on various funding obligations and other adjustments, defined as the Estimated Closing Payment.  *See*, Exhibit A at ¶ 1.3 (b).

18. Many of those funding obligations and other adjustments were not defined at that time, and were left to be defined by a fixed audit process to be initiated by Buyer and reviewed by the Seller Group, complete with dispute resolution process to resolve any disagreements as the numbers at issue.  *See*, Exhibit A at ¶ 1.3 (b).

19. On information and belief, Buyer has either not commenced or has not completed that audit for the Estimated Closing Payment (hereinafter "Closing Payment") within the sixty days allotted under the Asset Purchase Agreement.

20. The Closing Payment was also to be calculated by the issuance of equity interest in Air Pros Solutions Holdings, LLC at the option of the Seller Group. *See*, Exhibit A at ¶ 5.1 (b).

21. That Closing Payment referenced and incorporated multiple schedules to be completed by Buyer, yet, on information and belief, many of them have yet to be created.

22. The Agreement also allowed for Setchell to be an employee and the President of HAP and "responsible for the day-to-day operations of the Buyer." *See*, Exhibit A at ¶ 2.2 (a).

23. The Agreement also provided for a cash Earn-Out payment of up to $10,000,000.00 that reflected the health of the new entity at the one-year mark. *See*, Exhibit A at ¶ 1.6.

24. HAP never intended to pay C&P, Setchell, and Clayton what they were owed for C&P's assets, and has actively worked to diminish the value of the sold assets so as to reduce the amount of the Earnout Payment.

25. Section 5.10(b) of the Agreement provides that HAP was to repurchase $3,000,000 of C&P's equity interest in Air Pros Solutions Holdings, LLC from C&P within ten days of HAP closing with Peak Rock Capital.

26. Defendant failed to pay that amount to C&P for months after the Peak Rock closing, and it took the threat of legal intervention for HAP and Perera to finally provide any of those funds to Plaintiff in May of 2022.

27. Section 1.3(b) of the Agreement provided that "Buyer and Owner shall jointly estimate the Closing Payment (the "<u>Estimated Closing Payment</u>"). Within sixty (60) days following the Closing Date, Buyer shall cause to be prepared and delivered to Owner a calculation of the Closing Payment, including a calculation of the actual Net Working Capital

(including such schedules and data as may be appropriate to support such calculations) as of the Closing Date (the "Buyer's Report"). (Emphasis in original).

28. Defendant has breached the Agreement by failing to provide complete schedules so as to constitute a final and complete Buyer's Report.

29. Section 1.6 of the Agreement, titled Earnout, provides that "Buyer shall pay to Company an additional payment of up to Ten Million Dollars ($10,000,000) (the "<u>Earn-out Payment</u>"), with such Earn-Out payment being equal to 90% of the Net Operating Cash Flow of the Business during the twelve (12) month period following the Closing (the "<u>Earn-out Period</u>")."

30. Section 1.6 continues: "Such Earn-out Payment shall be payable in cash within ninety (90) days following the end of the Earnout Period; provided that Buyer has received a satisfactory audit covering such Earn-Out Period."

31. With the Closing Date being August 21, 2021, the Earn-out Period would have concluded on August 21, 2022. Accordingly, the Earn-out Payment was due ninety days later, on November 19, 2022.

32. Defendant HAP, has failed to pay to Plaintiff C&P the Earn-out Payment due to it.

33. Further, HAP has failed to act in a proper and prudent manner so as to have the necessary audit completed.

34. Section 5.10 of the Agreement provides that the "Company shall have the right to put back to Buyer up to $100,000 of APS Equity Interest per month (up to a maximum of $5,000,000 in the aggregate) at the Closing issuance price."

35. HAP has refused to allow C&P to put back its APS Equity Interest in breach of the Agreement.

36. Section 6.1(b) provides that HAP shall indemnify Plaintiff "from and against any and all Damages arising out of, resulting from or in any way relate to (i) a breach of, or inaccuracy in, any of the representation or warranties made by Buyer in this Agreement, (ii) a breach or default in performance by Buyer of any covenant or agreement contained in this Agreement, or (iii) any and all Damages arising from or in any way related to Assumed Liabilities."

37. The Defendant's performance, or lack thereof, and breaches of the Agreement have led to lawsuits against Plaintiff, decreases in their credit scores, and an overall diminishment in their reputations in the community.

38. Section 1.2 provides for the assumption of Plaintiff C&P's liabilities, specifically "Assumed Liabilities," by HAP. Those assumed liabilities are to include those liabilities specifically listed in the Agreement as well as those in a referenced Schedule 1.2. There was no Schedule 1.2 included in the Agreement.

39. Defendant HAP has failed to maintain those Assumed Liabilities. Defendant HAP has since stopped, or never started, making payments on liabilities that they acquired and were not paying new invoices and incoming balances due.

40. Upon learning of the failure of HAP to maintain the Assumed Liabilities, as well the additional expenses incurred by HAP, Setchell, in his capacity as President of HAP, immediately began working to make sure that HAP's vendors and employees were timely paid, even going so far as to take out his own loans to make payments.

41. From August 20 to December 1, 2021, HAP did not pay bills or invoices. Setchell made sure that distributors were paid so that HAP could buy materials and keep the company operating.

42. Defendant continues to have issues paying the new company's employees. Recently, HAP withheld payments to employees for services and for commissions, and did not make those payments until government agencies got involved.

43. The Agreement provides that it shall be construed and enforced in accordance with the law of the State of Alabama.

## COUNT ONE:
## BREACH OF CONTRACT

44. Plaintiff adopts the allegations stated in paragraphs 1-43 herein.

45. C&P Hansen Heating and Cooling, Inc. and Hansen Air Pros, LLC are parties to the Asset Purchase Agreement.

46. C&P Hansen Heating and Cooling, Inc. performed under the Agreement.

47. Hansen Air Pros, LLC's actions as described herein constitute breaches of the Agreement.

48. C&P Hansen Heating and Cooling, Inc. has been damaged as a result of HAP's breaches of the Agreement.

WHEREFORE, Plaintiff demands judgment for compensatory and punitive damages, interest and attorneys' fees against Defendant HAP, and for such other and further relief as the Court may deem proper.

## COUNT TWO:

## BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

49. Plaintiff adopts the allegations stated in paragraphs 1-43 herein.

50. This is an action pursuant to the implicit covenants of the foundational agreement, as well as Ala. Code § 10A-5A-9.01 against Hansen Air Pros, LLC for breach of the implied covenant of good faith and fair dealing.

51. The implied covenant of good faith and fair dealing requires a party to a contract to dispense with the ongoing requirements thereof fairly and in good faith.

52. HAP has failed to complete the schedules and audit contemplated under the agreement, has failed to make necessary payments to keep the business as a going concern, has failed to permit Setchell to run the day-to-day business of the entity, and has thereby acted in a manner that damages the benefit of Plaintiff's bargain under those terms.

53. HAP breached the implied covenant of good faith and fair dealing by engaging in grossly negligent or reckless conduct, and/or willful or intentional misconduct as described hereinabove.

54. HAP is liable for all damage to property or persons resulting from HAP's grossly negligent, reckless, willful and/or intentional misconduct.

WHEREFORE, Plaintiff demands judgment for compensatory and punitive damages, interest and attorneys' fees against Defendant based on Defendant's breach of the duties owed to the Plaintiff, and for such other and further relief as the Court may deem proper.

## COUNT THREE:
## ACCOUNTING

58. Plaintiff adopts the allegations stated in paragraphs 1-43 herein.

59. This is an action for an accounting to determine amounts owed to Plaintiff because the amount is uncertain and cannot be calculated based on the information available to Plaintiff.

60. The relationship between Plaintiff and the Defendant or other circumstances are such demonstrate that Plaintiff's legal remedies are inadequate

61. The amount due the Plaintiff is unknown and cannot be ascertained without an accounting, since the information necessary to determine that amount is within the exclusive knowledge of Defendant.

62. Plaintiff has requested access to contemporaneous and current financial information related to HAP.

63. HAP is in a unique position to provide the required information, and has refused to provide access to the financial information of HAP.

64. Plaintiff has been damaged and continues to be damaged by HAP's failure to provide access to all contemporaneous and current financial information related to HAP in order to make an accurate, complete accounting and calculation of amounts owed.

WHEREFORE, Plaintiff demands judgment ordering HAP to provide a full accounting, under the supervision of the Court, of all dealings and transactions involving HAP and for damages, interest and attorneys' fees against HAP and for such other and further relief as the Court may deem proper.

**Done this 30th day of December, 2022.**

/s/ Gary Dean Farmer
Gary Dean Farmer
Florida State Bar No.: 68725
**INTERNATIONAL COUNSEL PLLC**
1395 Brickell Avenue, Suite 853
Miami, FL 33131

Phone: (305) 600-3381
gfarmer@international-counsel.com

Thomas M. Loper*
Alabama State Bar No: 8947-O57L
**LOPER LAW LLC**
452 Government Street, Suite E
Mobile, AL 36602
Phone: (251) 288-8308
tloper@loperlawllc.com

Edward A. R. Miller*
Alabama State Bar No.: ASB-7815-D47M
**THE MILLER FIRM**
1605 Main Street
Daphne, AL 36526
Phone: (251) 216-0001
edward@themillerfirm.com

*Counsel for Plaintiff*

*\*Pending Motion Pro Hac Vice*